**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

SAMUEL SURLES,

       Plaintiff,                       CIVIL ACTION NO. 12-CV-12403

  vs.                               DISTRICT JUDGE PAUL D. BORMAN

                                         MAGISTRATE JUDGE MONA K. MAJZOUB

GAYLE LEACH, RAYMOND
BOOKER, and MARVA MYLES

       Defendants.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Samuel Surles, currently a prisoner at the Lakeland Correctional Facility in Coldwater, Michigan, has filed this action under 42 U.S.C. §§ 1983, 1985, and 1986 against three prison officials, Librarian Gayle Leach, Warden Raymond Booker, and Grievance Coordinator Marva Myles, in their individual capacities for various Constitutional violations and torts. (Docket no. 1.)  Plaintiff seeks $205,000 in compensatory damages, jointly and severally against each defendant, and $30,000 in punitive damages against each defendant individually.  (*Id.* at 17.)  Additionally, Plaintiff requests numerous declaratory judgments establishing Defendants' wrongdoing and several injunctions against Defendants and the Michigan Department of Corrections.  (*Id.* at 16.)

Before the Court are Defendants' Motions to Dismiss under Fed. R. Civ. P. 12(b)(6).  (Docket nos. 13 and 34).  Plaintiff filed a Response to Defendants' first Motion to Dismiss.  (Docket nos. 14.)  All pretrial matters have been referred to the undersigned for consideration. (Docket no. 10.)  The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and

recommendation.[1]

**I.     Recommendation**

For the reasons that follow, the Court recommends granting Defendants' Motions to Dismiss (docket nos. 13 and 34). Because the Court recommends doing so, it further recommends denying as moot Plaintiff's outstanding Motion to Stay (docket no. 15) and Motion for Partial Summary Judgment (docket no. 18) and Defendants' outstanding Motion to Stay discovery (docket no. 16). Therefore, the Court recommends dismissing this case in its entirety.

**II.    Report**

**A.     Facts**

On February 14, 1969, Plaintiff was sentenced to life in prison for First Degree Murder in violation of M.C.L. § 750.316; he was turned over to the Michigan Department of Corrections. (*See* docket no. 1 at 2.) In September 2009, Plaintiff was transferred to the Ryan Correctional Facility in Detroit, Michigan. (*See id.* at 10.) Sometime in May 2011, Plaintiff and another inmate, Davis Totten, drafted a complaint under 42 U.S.C. § 1983, on behalf of themselves and other inmates, alleging a violation of their right to practice the Muslim religion according to their faith (the "May 2011 Complaint"). (*See id.* at 10-11.) The May 2011 Complaint was filed against Defendants Booker and Myles as well as several other individuals. (*Id.*)

Plaintiff alleges that on May 22, 2011, Plaintiff attempted to have copies made of various exhibits that were to be included in the May 2011 Complaint, but Defendant Leach refused to make the copies without first reading the May 2011 Complaint. (*Id.* at 11.) Plaintiff implies that

---

[1]The Court dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

Defendant Leach eventually made some of the necessary copies, but she refused to copy some "religious materials." (*See id.*)

Plaintiff alleges that on May 23, 2011, he and another inmate, Eric Tamlin, were called in for questioning by the prison's Deputy Warden, Scott Nobles. (*Id.* at 10.) Plaintiff contends that during this conversation, Nobles asked Plaintiff and Tamlin if they were working toward filing a lawsuit against any of the prison's employees. (*Id.*; Docket no. 14 at 10.) Plaintiff admits that he and Tamlin lied to the Deputy Warden and said "no." (Docket no. 14 at 10.) Seven days later, on May 31, 2011, Plaintiff was transferred to the Mound Correctional Facility. (Docket no. 1 at 9.)

The next day, Totten appears to have mailed the May 2011 Complaint to the Court Clerk's Office; the Complaint was filed on June 8, 2011, and was assigned to Judge Sean F. Cox and Magistrate Judge Mark A. Randon. *Totten v. Caldwell*, No. 11-12485 (E.D. Mich. 2011). Plaintiff, however, was not included as a party to the action, apparently because he did not sign the complaint. *See id.*, docket no. 27 at n.1 (E.D. Mich. July 31, 2012) (Randon, M.J.). Plaintiff appears to have attempted to correct this omission, but he was unsuccessful. *See id.*, docket nos. 6 and 19.[2,3]

On November 18, 2011, the defendants in *Totten* filed their Motion for Summary Judgment. *Id.*, docket no. 17. Totten filed a response. *Id.*, docket no. 18. On September 11, 2012, almost 10

---

[2]Docket no. 6 is a letter dated June 14, 2011, from Plaintiff to the Court Clerk explaining that he should be listed as a Plaintiff in *Totten v. Caldwell*. He also referenced a his Power of Attorney and Third Step Grievance (which were attached to the original complaint) as evidence of his intent to be included as a Plaintiff. Plaintiff then asked that the Court "verify that [he is] listed as a 'plaintiff.'" *Totten v. Caldwell*, docket no. 6 at 1.

[3]Docket no. 9 is a letter dated December 19, 2011, from Plaintiff to the Court Clerk notifying the Court Clerk of other pending actions in an effort to comply with Court Rules. Additionally, Plaintiff attached an Application to Proceed without Prepayment of Fees and Costs. *Totten v. Caldwell*, docket no. 9 at 1-2.

months later, Judge Cox adopted a Report and Recommendation issued by Magistrate Judge Randon granting the defendants' Motion for Summary Judgment with the exception of one claim: "Totten's claim that Defendant Caldwell violated his First Amendment right by failing to schedule the Eid-al-Adha prayer service." *Id.*, docket no. 29 at 3. Plaintiff's claims in *Totten* were officially dismissed at this time for failure to sign the May 2011 Complaint.[4]

On October 2, 2012, Judge Cox held a status conference; Totten failed to appear, and on October 31, 2012, Totten's remaining claim was dismissed for failure to prosecute. *Id.*, docket no. 31. Plaintiff now brings this action, which appears to raise the following claims:

- Defendants "subjected Plaintiff to discrimination, retaliation, and cruel and unusual punishment in violation of the Eighth, Ninth and Fourteenth Amendments[;]"

- Defendant Leach "den[ied] Plaintiff legal copies of Islamic reading material used in his lawsuit" in violation of Plaintiff's First Amendment right of access to the court and his Fourteenth Amendment right to procedural and substantive due process.

- Defendants removed Plaintiff from the Warden's Forum and transferred him from the Ryan Correctional Facility to the Mound Correctional Facility in retaliation for bringing a claim and grievances against them and for assisting others in the same in violation of his First Amendment right of access to the court;

- Defendants conspired to prevent Plaintiff from assisting others with their lawsuits in violation of the First and Ninth Amendments;

- Defendants interfered with Plaintiff's right to file grievances in violation of the First, Eighth,

---

[4]Throughout the course of the matter, Plaintiff attempted to participate as a plaintiff in *Totten*. For example, on December 22, 2012, Plaintiff filed a Motion to Compel, which was later denied, again because Plaintiff had not signed the Complaint. *Id.* docket nos. 21, 28.

4

>  Ninth, and Fourteenth Amendments;

- Defendants' actions constituted intentional infliction of emotional distress;
- Defendants breached a contractual obligation "to perform their duties in a reasonable and dilligent (sic) manner;" and
- Defendants failed "to protect the health and safety of plaintiff, as well as his right to excrcise (sic) fundamental constitutional rights." (Docket no. 1 at 12-15.)

Plaintiff brings all of his claims under various U.S. and Michigan statutes. (*Id.*)

### B. Standard of review

#### 1. Motion to dismiss standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. The court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).

This acceptance of factual allegations as true, however, is inapplicable to legal conclusions: "Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotations

and citations omitted). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

"Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* To make this determination, a court may apply the following two-part test: (1) "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth; and (2) "assume the veracity [of the remaining allegations] and determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

**C.      Analysis**

Plaintiff's Claim is set forth in the form of nine causes of action over 44 paragraphs. (*See* docket no. 1.) Defendants have moved the Court to dismiss Plaintiff's complaint. As an initial matter, the Court notes that "[p]ro se complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers' and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (emphasis removed, citation omitted). It is through this prism that the Court views Plaintiff's Complaint.

**1.      Plaintiff's Claims for Injunctive and Declaratory Relief**

Plaintiff requests two forms of injunctive relief: (1) an injunction requiring all MDOC Correctional Facilities to provide photocopies of Islamic materials used for litigation; (2) an injunction against further prison transfers of Plaintiff caused by Defendants either as a retaliatory action or if Plaintiff is part of the Warden's Forum. (Docket no. 1 at 16.) Plaintiff has neither included the MDOC as a Defendant in this action nor has he even suggested that other MDOC prison facilities (or other prison staff at the Ryan Correctional Facility) will not copy Islamic

materials used for litigation. Thus, injunctive relief against the MDOC would be improper. Moreover, Plaintiff is no longer incarcerated at the Ryan Correctional Facility; therefore, Plaintiff's request for injunctive relief as to Defendants is moot. For these reasons, the Court recommends dismissing Plaintiff's claims for injunctive relief.

Plaintiff's claims for declaratory relief ask the Court to enter Declaratory Judgment under Fed.R.Civ.P. 57 for each of Plaintiff's claims against Defendants. (*Id.* at 15-16.) "A declaratory judgment is appropriate when it will 'terminate a controversy' giving rise on undisputed or relatively undisputed facts." Fed.R.Civ.P. 57 (Advisory Committee Notes, 1937 Adoption). Such is not the case here. Therefore, the Court recommends denying Plaintiff's requests for declaratory judgment.

### 2. **Plaintiff's Claims Against Defendant Booker**

It is a well-established principle that § 1983 liability cannot be based on a mere failure to act or on a theory of respondeat superior. *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206-07 (6th Cir. 1998). Rather, a supervisor must have "'either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must allege that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)). Thus, to state a plausible claim for relief, a plaintiff must allege that each defendant was personally involved in, or otherwise condoned, encouraged, or knowingly acquiesced in the alleged misconduct. *Id.*

In Plaintiff's Complaint, he alleges that Defendant Booker's "respon[se] to [Plaintiff's] Step I. Grievance was . . . false and misleading," that Defendant Booker did not show his manner of investigation or proof that Defendant Leach complied with MDOC policy, that Defendant Booker

violated his First, Eighth, Ninth, and Fourteenth Amendment rights, and that Defendant Booker's agent, Nobles, questioned Plaintiff about the May 2011 Complaint. (Docket no. 1 ¶¶12, 13, 15, and 17.) In his response to Defendants' Motion to Dismiss, Plaintiff asserts that "[w]hen Defendant Booker signed or caused to be signed, Plaintiff's Transfer Order of May 21, 2011, he was informed of Plaintiff (sic) grievance of May 24 . . . against Defendant Gayle Leach and Marva Myles." (Docket no. 14 at 12.) Plaintiff contends that "Defendant Booker knew, or reasonable (sic) should have known of a constitutional violation." *Id.* Specifically, Plaintiff alleges that "Defendant Booker acknowledged in [Plaintiff's] Step II Grievance Appeal response . . . that Deputy Warden Scott Nobles and Defendant . . . Leach both were contacted about Plaintiff's Transfer Order" and that Defendant Booker did nothing to prevent the Constitutional Violation. (*Id.* at 12-13.)

Many of Plaintiff's allegations regarding Defendant Booker are no more than unsupported conclusions, and as such, they are not entitled to a presumption of truth. Moreover, Plaintiff discloses that "Deputy Warden Nobles . . . indicated plaintiff's Transfer was 'routine'" and that "Nobles denied questioning Plaintiff about suing him." (*Id.*) Plaintiff's Complaint fails to show that Defendant Booker "implicitly authorized, approved, or knowingly acquiesced in the [alleged] unconstitutional conduct." *Shehee*, 199 F.3d at 300 (internal quotations omitted). At most, Plaintiff has shown that Defendant Booker may have been somewhat less than diligent in conducting his investigation and that Defendant Booker may have made a mistake when he relied on statements made by Nobles and Leach. Such conduct, however, does not give rise to § 1983 liability. Therefore, the Court recommends dismissing Plaintiff's claims against Defendant Booker.

### 3. Plaintiff's Claims of Discrimination and Cruel and Unusual Punishment

Plaintiff's Complaint mentions "discrimination" and "cruel and unusual punishment."

(Docket no. 1 ¶ 28.) Plaintiff, however fails to describe what type of discrimination or cruel and unusual punishment he is alleging. It appears that Plaintiff may be arguing that his transfer from the Ryan Correctional Facility to the Mound Correctional Facility was cruel and unusual, but the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981) (citation omitted). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." Ivey v. Wilson, 832 F.2d 950, 954 (6th Cir. 1987). Plaintiff's Complaint is entirely bare with regard to factual allegations of such conduct; thus, it does not state a plausible claim for relief. Therefore, the Court recommends dismissing Plaintiff's claims for discrimination and cruel and unusual punishment.

### 4. Plaintiff's Claims for Interference With Grievance Filings

Plaintiff's Complaint alleges that Defendant Booker and Deputy Warden Nobles "interfere (sic) with his right to file grievances." (*Id.* ¶ 38.) The Court has already recommended dismissing Plaintiff's claims against Defendant Booker, and Plaintiff has not included Nobles as a defendant in this matter. Moreover, Plaintiff does not state anywhere in his Complaint that any of the Defendants prohibited him from filing a grievance. To the contrary, he complains that all of his grievances were denied. (*See* docket no. 1 ¶¶ 12-14, 17-19.) To the extent that Plaintiff may be attempting to assert that Defendant Booker's denial of his grievances amounted to an interference with his rights, where a defendant's only involvement in the alleged unconstitutional conduct is the denial of administrative grievances, the defendant cannot be held liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Therefore, the Court recommends dismissing Plaintiff's

claim for interference with grievance filings.

### 5. Plaintiff's Access to the Courts Claims

Prisoners have a fundamental right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The right is derived from the Due Process Clause of the Fourteenth Amendment and the First Amendment right to petition for redress of grievances. *Knop v. Johnson*, 977 F.2d 996, 1002 (6th Cir.1992). A prisoner's access to the courts must be adequate, effective, and meaningful, which means that prison officials must provide prisoners with adequate law libraries or assistance from individuals trained in the law. *Bounds*, 430 U.S. at 822, 828. This right is limited to claims where the underlying action is a direct criminal appeal, a petition for writ of habeas corpus, or a civil-rights action. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). Generally, such claims are divided into two categories: (1) claims where "official action is presently denying an opportunity to litigate for a class of potential plaintiffs[, but t]he opportunity to litigate has not been lost for all time" (forward-looking claims); and (2) claims in "specific cases that cannot now be tried . . . no matter what official action may be in the future" (backward-looking claims). *Christopher v. Harbury*, 536 U.S. 403, 412-13 (2002).

The goal of a forward-looking claim "is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.* at 413. The goal of a backward-looking claim is to "provid[e] relief obtainable in no other suit in the future." *Id.* at 414. In either case, the plaintiff must show that "a nonfrivolous legal claim ha[s] been frustrated or was being impeded." *Id.* at 415. And the complaint must "state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a)" such that it pleads the "underlying cause of action and its lost remedy . . . by allegations . . . sufficient to give fair notice to the defendant." *Id.* at 416, 417-18.

To meet this requirement, a plaintiff must show (1) the loss of a nonfrivolous and arguable claim that is "more than a mere hope;" (2) the defendant's acts that caused the loss of the claim; and (3) a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Id.* at 415-16; *see also Clark v. Johnston*, 413 Fed. App'x. 804, 816 (6th Cir. 2011).

### a.       Plaintiff's Loss of a Nonfrivolous Underlying Claim

Here, Plaintiff's underlying claim appears to arise out of the May 2011 Complaint. (Docket no. 1 ¶¶ 22, 24, 25.)  In his Response to Defendants' Motion to Dismiss, Plaintiff clarifies that he "was prevented from pursuing his lawsuit with Plaintiff Davis V. Totten because he was transfer (sic) on May 31, 2011." (Docket no. 14 at 17.) While the factual background set forth in Plaintiff's Complaint is somewhat bare, his reference to the May 2011 Complaint and his citation to the assigned case number, 2:11-cv-12485, are sufficient to give Defendants fair notice of the underlying cause of action.  Moreover, a review of the docket in *Totten* indicates that Plaintiff's underlying claim was nonfrivolous; indeed, one of the claims in the May 2011 Complaint survived the *Totten* defendants' Motion for Summary Judgment. *Totten*, No. 11-12485, docket no. 29.

Because Plaintiff's underlying complaint was nonfrivolous, the Court must determine whether the claim was "lost."   Plaintiff was dismissed from *Totten* as part of Judge Cox's September 11, 2012 Order.[5] *Id.*  Totten's remaining claim was dismissed for failure to prosecute on October 31, 2012. *Id.*, docket no. 31.  Plaintiff's claim and Totten's claim were each dismissed

---

[5]To the extent that Defendants may argue that Plaintiff's claim in this matter was not ripe at the time he filed his Complaint, "ripeness is peculiarly a question of timing," and where a "change in circumstance has substantially altered the posture of the case as regards the maturity of [plaintiff's claims,] . . . it is the situation now . . . that must govern." *Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 139-40 (1974); *see also Casden v. Burns*, 306 Fed. App'x. 966, 971-72 (6th Cir. 2009).

without prejudice, *id.*, docket nos. 29 and 31, which suggests that Plaintiff's claims are not "lost" for purposes of his access-to-the-courts claim. Nevertheless, the only remaining claim stemming from the May 2011 Complaint after Judge Cox's partial grant of summary judgment was a claim for injunctive relief against staff at the Ryan Correctional Facility. Plaintiff is no longer housed at the Ryan Correctional Facility; thus, his underlying claim for injunctive relief is now moot. Therefore, Plaintiff's underlying claim has been "lost for all time."

### b. Defendants' Acts

Plaintiff claims that on May 22, 2011, Defendant Leach refused to make copies of exhibits that Plaintiff and Totten wanted to include with the May 2011 Complaint. Even accepting Plaintiff's contention as true, Judge Cox dismissed Plaintiff from *Totten* because Plaintiff failed to properly sign the May 2011 Complaint. *Totten*, docket no. 29. And he dismissed the case entirely because Totten failed to attend the October 2, 2012 status conference. *Id.*, docket no. 31. There is no evidence to suggest that the lack of exhibits had any effect on the outcome of the underlying case. Therefore, the Court recommends dismissing Plaintiff's access-to-the-courts claim with respect to any allegations surrounding Defendants' failure to provide photocopies.

Plaintiff next alleges that Defendants infringed on his right to provide legal assistance to others and that his transfer to the Mound Correctional Facility impeded their right to his assistance. (Docket no. 1 at 32, 34, 36, 38.) "[W]hile prisoners have a constitutional right of access to courts, this requires only that prison officials provide sufficient assistance to give prisoners an adequate opportunity to present their federal constitutional claims in court; there is no free-standing right to legal assistance from another inmate." *Henry v. City of Eastpointe Police Dep't*, No. 11-10192, 2012 WL 3151566, at *2 (E.D. Mich. July 13, 2012) (Komives, M.J.) (citing *Shaw v. Murphy*, 532 U.S.

223, 231 n.3 (2001); *Lewis v. Casey*, 518 U.S. 343, 350–51 (1996). Moreover, "'Prison inmates do not possess the right to a particular prisoner's help in preparing their legal materials, so long as prison officials make other assistance available." *Id.* (quoting *Smith v. Maschner*, 899 F.2d 940, 950 (10th Cir. 1990)) (citations omitted). Thus, there is no legal basis for Plaintiff's claim. Moreover, even if such a right did exist, Plaintiff would not have standing to assert that right on Totten's behalf. Therefore, the Court recommends dismissing Plaintiff's access-to-the-courts claim with respect his alleged right to provide counsel to others.

Finally, Plaintiff asserts that he lost the underlying claim because of his transfer from the Ryan Correctional Facility to the Mound Correctional Facility. (Docket no. 14 at 17.) Plaintiff's argument rests on the assumption that he would have properly signed the May 2011 Complaint (or properly cured the signing deficiency) if he had not been transferred. In *Bounds*, the Supreme Court recognized a prisoner's fundamental right of access to the courts. *Bounds*, 430 U.S. 817. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis*, 518 U.S. 343. Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351. To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Id.*; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir.1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir.1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir.1985). "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, *because of deficiencies in the prison's legal assistance facilities, he could not have known.*" *Id.* (emphasis added). Here, Plaintiff knew of the deficiency in the May 2011

13

Complaint; he even wrote to the Court in an effort to correct the deficiency. *Totten*, docket no. 6. And Plaintiff has not alleged a deficiency in the legal facilities at the Mound Correctional Facility. Thus, even if Plaintiff's transfer to the Mound Correctional Facility caused the May 2011 Complaint to be filed incorrectly, the matter was ultimately dismissed because Plaintiff failed to properly correct the signing deficiency, not because of Defendants' actions. Therefore, the Court recommends dismissing Plaintiff's access-to-the-courts claim related to his prison transfer.[6]

### 6. Plaintiff's Retaliation Claims

Plaintiff claims that he was transferred from the Ryan Correctional Facility and removed from the Warden's Forum in retaliation for filing grievances and for filing the May 2011 Complaint. (Docket no. 1 ¶¶ 15, 28, 32, 36.) To establish a claim of retaliation under the First Amendment, an inmate must show that (1) he was engaged in protected conduct, (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) there is a causal connection between the two. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Filing a grievance or a complaint is constitutionally protected conduct under the First Amendment. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99–2442, 2000 WL 1679458, at *2 (6th Cir. Nov.1, 2000); *Burton v. Rowley*, No. 00–1144, 2000 WL 1679463, at *2 (6th Cir. Nov.1, 2000). Moreover, Defendants do not appear to contest this assertion. Therefore, the Court will assume that Plaintiff was engaged in protected conduct.

#### a. Prison Transfer

Plaintiff fails to establish that his transfer was an adverse action. "[P]risoners are expected

---

[6]Because the Court recommends dismissing Plaintiff's access-to-the-courts claims for failure to meet the causation requirement, the Court will not address Plaintiff's requested remedy.

to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers–El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). *See, e.g., Smith v. Yarrow*, 78 Fed. App'x. 529, 543 (6th Cir. 2003) (holding that a "transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks omitted). If, however, a foreseeable consequence of a transfer would be to substantially inhibit a prisoner's ability to access the courts, then such a transfer could be considered an adverse action that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Siggers–El*, 412 F.3d at 702 (holding that a transfer was an adverse action, where the transfer resulted in plaintiff losing a high paying job that paid for his lawyer fees and moved him further from the attorney).

Here, Plaintiff alleges that the transfer impeded his access to the court by making it more difficult for him to communicate with Totten. Nevertheless, for the reasons stated herein at section II.C.5.b, Plaintiff's access to the courts was not inhibited by his transfer. Moreover, Plaintiff continued to communicate with the Court in an attempt to prosecute his claims under the May 2011 Complaint. Thus, even if the transfer could have inhibited his ability to access the courts, the evidence suggests that Plaintiff continued to engage in the protected conduct even after the allegedly adverse action. Therefore, the Court recommends dismissing Plaintiff's retaliatory transfer claim for failure to allege conduct sufficiently adverse to deter a reasonable person from engaging in protected conduct.

### b. Removal from the Warden's Forum

Plaintiff's removal from the Warden's Forum is likewise not an adverse action. "Because

an MDOC inmate 'has no liberty or property interest in his position as an inmate representative on the warden's forum,' removal of the inmate from that position does not constitute an adverse action for purposes of a retaliation claim." *Davis v. Straub*, No. 07-156, 2009 WL 4908433, at *9 (W.D. Mich. Dec. 11, 2009) (quoting *Vandiver v. Martin*, 48 Fed. App'x. 517, 519-20 (6th Cir. 2002)) (citing *Cromer v. Dominguez*, 103 Fed. App'x. 570, 573 (6th Cir. 2004)). Therefore, the Court recommends dismissing Plaintiff's retaliation claim based on his removal from the Warden's Forum.

### 7. Plaintiff's Due Process Claims

Plaintiff's Complaint makes the general assertion that "Defendants . . . have impermissibly infringed upon Plaintiff's First Amendment right of Freedom of Speech, of Privacy, Access to the Court, in violation of the Fourteenth Amendment right to procedural and substantive due process." (Docket no. 1 ¶ 30.) Additionally, Plaintiff asserts that Defendants "had no right to punish him, or to obstruct or hinder him or to prevent him from challenging their illegal actions, where they are federally protected rights to procedural due process." (*Id.* ¶ 32.)

The Fourteenth Amendment does not protect against all deprivations of life, liberty, or property. *Parratt v. Taylor*, 451 U.S. 527, 537 (1981). Procedural due process claims only apply to deprivations of life, liberty, or property that are "without due process of law." *Id.* Additionally, two types of substantive due process violations are recognized by the Sixth Circuit: "(1) official acts that are unreasonable and arbitrary and may not take place no matter what procedural protections accompany them, and (2) official conduct that shocks the conscience." *Harris v. City of Akron*, 20 F.3d 1396, 1405 (6th Cir. 1994) (citations and internal quotations omitted). "Actions meet this high standard if they are an 'egregious abuse of governmental power.'" *Kinross Charter Twp. v. Osborn*, No. 06–CV–245, 2007 WL 4284861, at *16 (W.D. Mich. Dec. 3, 2007) (quoting *Shehee v. Luttrell*,

199 F.3d 295, 301 (6th Cir.1999)).

Plaintiff appears to claim that his due-process rights were violated when Defendant Leach failed to make photocopies of the Islamic materials for the May 2011 Complaint and when he was transferred to the Mound Correctional Facility. (Docket no. 1 ¶¶ 30, 32.) With regard to the photocopies, Plaintiff's Complaint shows that he filed multiple grievances and that those grievances were heard. Moreover, Michigan law allows for judicial review of administrative decisions in state courts. *De Walt v. Warden, Marquette Prison*, 112 Mich. App. 313, 315 N.W.2d 584, 585 (1982); *see* Mich. Comp. Laws Ann. §§ 791.251 et seq. These state remedies have been held adequate under federal due-process standards. *Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995); *Branham v. Spurgis*, 720 F.Supp. 605, 608 (W.D. Mich.1989). With regard to Plaintiff's prison transfer, such a transfer "does not directly implicate the Due Process Clause of the Fourteenth Amendment." *Olim v Wakinekona*, 461 U.S. 238, 244 (1983) (citing *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Montayne v. Haymes*, 427 U.S. 236 (1976)). Therefore, the Court recommends dismissing Plaintiff's due-process claims.

### 8. Qualified Immunity

Defendants allege that they are entitled to qualified immunity for Plaintiff's claims. (Docket no. 13 at 13-16.) Plaintiff claims that Defendants are not entitled to such protection because they violated Plaintiff's clearly established rights. (Docket no. 14 at 19-20.) The Sixth Circuit has set forth a three-step inquiry to determine whether a defendant is entitled to qualified immunity: "First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations

17

by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

Qualified immunity, however, is best addressed after determining whether a plaintiff has stated a constitutional claim upon which relief can be granted: "[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). Therefore, because the Court recommends dismissing Plaintiff's claims against Defendants on their merits, the Court will not address Defendants' assertion of qualified immunity.

## 9. Plaintiff's State Law Claims

### a. Intentional Infliction of Emotional Distress

To establish a claim of intentional infliction of emotional distress, a plaintiff must show: "(1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress." *Lewis v. LeGrow*, 670 N.W.2d 675, 689 (Mich. Ct. App. 2003) (citations omitted). Plaintiff makes general assertions that Defendants "cause[d] him to suffer great pain" and that their acts were "purposeful and with wanton disregard for the protection and safety of Plaintiff." (Docket no. 1 ¶¶ 25, 40.) Even if the Court were to accept Plaintiff's allegation that his prison transfer was extreme and outrageous conduct and that the transfer caused some emotional distress, Plaintiff has failed to state a plausible claim for relief. Other than his threadbare assertions, Plaintiff has failed to allege that Defendants acted with intent or recklessness or that his "great pain" rises to the level

of severe emotional distress. Therefore, drawing on its judicial experience and common sense, the Court recommends dismissing Plaintiff's claim for intentional infliction of emotional distress.

### b.     Breach of Contract – Third Party Beneficiary

Plaintiff claims that he was a third-party beneficiary to Defendants' employment contracts and that he was harmed by their breaches of duty. (Docket no. 1 at 42.) Plaintiff may be a third-party beneficiary to Defendants' employment contracts under M.C.L. 600.1405, but such a claim is not recognized under Michigan law. *See In re Jackson Lockdown/MCO Cases*, 568 F.Supp. 869, 888 (D.C. Mich. 1983) ("[T]he Court [cannot] create a new common law tort giving a state prisoner a claim for money damages for a prison guard's breach of his contract of employment with the state."). Moreover, even if the Court were to recognize such a claim, Plaintiff has not alleged any underlying breach by Defendants' on which his third-party claim could stand. Therefore, the Court recommends dismissing Plaintiff's claim for Breach of Contract.

### D.     Conclusion

For the above-stated reasons, the Court recommends granting Defendants' Motions to Dismiss (docket nos. 13 and 34). Because the Court recommends doing so, it further recommends denying as moot Plaintiff's outstanding Motion to Stay (docket no. 15) and Motion for Partial Summary Judgment (docket no. 18) and Defendants' outstanding Motion to Stay discovery (docket no. 16).

## III.    Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a

waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: November 28, 2012        s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Douglas Benedict and Counsel of Record on this date.

Dated: November 28, 2012        s/ Lisa C. Bartlett
                                Case Manager